**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHONNA COLEMAN, on behalf of herself and all others similarly situated,<br><br>                  Plaintiff,<br>v.<br><br>RETAILMENOT, INC., and ZIFF DAVIS, INC.,<br><br>             Defendants. | Case No.: 1:25-cv-01537<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shonna Coleman ("Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

**INTRODUCTION**

1.      RetailMeNot, Inc. ("RetailMeNot"), is a company focused on aggregating internet shopping coupons.

2.      On September 29, 2020, Ziff Davis, Inc. ("Ziff Davis"), then called J2 Global, acquired RetailMeNot for $420 million. Ziff Davis took control of RetailMeNot soon thereafter, and RetailMeNot thus became a Ziff Davis company. Ziff Davis refers to RetailMeNot as a "brand" of Ziff Davis.

3.      RetailMeNot and Ziff Davis operate and promote the RetailMeNot browser extension, a free browser extension that is widely used by consumers.

4.      The RetailMeNot browser extension is a free custom software program that a consumer may install on their internet browser or download on their cellphone or tablet. Once installed, the browser extension will automatically scan the internet for coupons and cashback offers.

5.      The RetailMeNot browser extension's ability to quickly sift through a wide range of coupon codes and cashback offers before a consumer makes an online purchase is what makes the browser extension so attractive to consumers—it allows consumers to effortlessly look for discounts on products that they are already interested in purchasing and have already added to their online shopping cart.

6.      The RetailMeNot browser extension can be used on desktop and laptop computers, as well as on a mobile device (i.e., phones and tablets) through an application that can be downloaded from the Apple App Store or Google Play Store.

7.      The RetailMeNot browser extension's popularity is evidenced by its consumer base, which ranges in the millions.

8.      Creators, including individuals on YouTube, Instagram and TikTok, direct their followers and viewers to specific products and services via affiliate links and earn sales commissions when consumers purchase those promoted products and services.

9.      Online merchants work with these creators through affiliate marketing programs, which rely on tracking tags and affiliate marketing cookies to determine who gets credit for online referrals and product sales.

10.      In an affiliate marketing program, an online merchant will give a creator a custom web link that the creator can then share with the creator's audience. If a consumer clicks on that custom link prior to making a purchase, the creator's unique affiliate cookie auto-populates and credits the creator with the sale. This is referred to as "last-click attribution."

11.      RetailMeNot is misappropriating that attribution during the online checkout process, causing creators, including Plaintiff and Class members, to lose out on commissions to which they are entitled.

12.    Defendants programmed this misappropriation into the RetailMeNot browser extension. When a consumer is checking out, the RetailMeNot browser extension substitutes its own affiliate cookie in place of that of the creator. This happens regardless of whether RetailMeNot identifies discount codes or cashback offers applicable to the purchase and happens even when a consumer used a creator's unique affiliate web link to navigate to the online merchant's website to make the purchase.

13.    Plaintiff and the Class are creators whose commission payments Defendants have wrongfully collected. Plaintiff brings this case on behalf of herself and all others similarly situated to recover the damages that she and others have sustained and enjoin Defendants' wrongful conduct going forward.

## JURISDICTION

14.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member (including Plaintiff) is of diverse citizenship from RetailMeNot and Ziff Davis, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.

15.    This Court has personal jurisdiction over RetailMeNot and Ziff Davis because Ziff Davis has its principal headquarters in New York, New York, does business in New York, directly or through agents, and has sufficient minimum contacts with New York such that it has intentionally availed itself of the laws of the United States and New York.

16.    Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because a substantial number of the events or omissions giving rise to the claims arose in this District, where Ziff Davis is headquartered and conducts business.

## PARTIES

**A.    Plaintiff**

17.    Shonna Coleman is a resident and citizen of Nebraska.

**B.    Defendants**

18.    Ziff Davis, Inc., is a corporation organized and existing under the laws of Delaware. Ziff Davis transacts business and is headquartered within this judicial District. Ziff Davis's headquarters are located at 360 Park Avenue South, 17th Floor, New York, NY 10010.

19.    RetailMeNot, Inc., is headquartered in Austin, Texas. RetailMeNot is one of Ziff Davis's domestic shopping brands and part of the Ziff Davis shopping business unit. Ziff Davis owns and operates RetailMeNot, which originally developed the RetailMeNot browser extension—initially called "Genie."

20.    RetailMeNot and Ziff Davis (collectively, "Defendants") operate the RetailMeNot browser extension.

## RELEVANT FACTS

**A.    Defendants' Methods of Appropriating Commissions**

21.    Ziff Davis acquired RetailMeNot and its browser extension for $420 million on September 29, 2020.

22.    Around the time of Ziff Davis's acquisition of RetailMeNot, RetailMeNot's browser extension was rebranded from "RetailMeNot Genie" to simply "RetailMeNot."

23.    The RetailMeNot browser extension is controlled by Ziff Davis.

24.    The RetailMeNot browser extension is a free custom software program that Defendants persuade consumers to download by promising that the extension will comb the internet for coupons that can be applied to items already in those consumers' online shopping

carts, thereby saving the consumer money. Defendants also promise cash-back opportunities to those who download the RetailMeNot browser extension.

25.    The RetailMeNot browser extension engages in near-instantaneous web scraping to search for and test coupon codes that might apply to the relevant purchase.

26.    Importantly, Defendants have effectively marketed the RetailMeNot browser extension, attracting over a million customers in a matter of years.

27.    With the rise of social media and increasing popularity of platforms like YouTube, online merchants have turned to creators—which include, but are not limited to, YouTubers, influencers, bloggers, and reviewers—to market their products to consumers.

28.    Creators make commissions by directing their audiences to affiliate links.

29.    Affiliate links are unique hyperlinks that creators use to direct consumers to a given website where they can purchase the product or service that the creator is promoting.

30.    Online merchants use tracking tags to determine whether a consumer landed on the webpage for the online merchant's product or service and made a purchase after clicking an affiliate link. If the tracking tags reveal that the consumer made the purchase after having used a creator's affiliate link, the online merchants can then attribute the sale to the responsible creator and provide the creator a commission.

31.    When a consumer clicks on a creator's affiliate link, a tracking tag is appended to the URL. The tracking tag is saved on the consumer's browser in the form of a cookie. The tracking tag enables the online merchant to know who sent the consumer to their website and, therefore, whom to credit with the referral and commission for the sale.

32.    When it comes to online referral commissions from affiliate links, the industry standard used for crediting sales is "last-click attribution," which means that the last "click" determines who gets credit for a sale.

33.    The RetailMeNot browser extension is designed to exploit the last-click attribution process by purposefully supplanting creators' cookies. The RetailMeNot browser extension does this by launching an additional web browser tab to the same online merchant website that simulates referral clicks—the click that would normally come from clicking on a creator's affiliate link.

34.    Analysis of network traffic on websites where the RetailMeNot browser extension was running reveals electronic transmissions and communications between a consumer's browser, the website, and other third parties. Network traffic is typically not viewed by ordinary website users but can be accessed using browser tools.

35.    Defendants have been using the RetailMeNot browser extension to manipulate network transmissions to allow RetailMeNot to surreptitiously take credit for sales commissions that they did not earn.

36.    The network traffic demonstrates that, when a consumer has downloaded the RetailMeNot browser extension and takes advantages of its coupon code and cash-back offers, Defendants silently and invisibly remove affiliate cookies and tracking tags that would otherwise credit the rightful salesperson—the creator—with the sale of a particular product or service.

37.    That is, the RetailMeNot browser extension displaces tracking tags that identify specific creators as the source of the referral, substitutes its own tracking tags, and holds itself out as the referrer of the specific products and/or services, even though the sale in question was the direct result of the creator's affiliate link.

38.     The images that follow illustrate what happens when a consumer clicks on a creator's affiliate link to purchase a product or service that the creator is promoting. Importantly, whether the creator will be credited with the referral and commission ultimately depends on whether the consumer is using the RetailMeNot browser extension.

39.     In the image below, the left side reflects the online merchant's website—that is, what ordinary consumers see as they navigate the internet—and the right side shows the inspection panel, which shows network traffic and provides a glimpse into what is happening behind the scenes prior to activating the RetailMeNot browser extension.



40.     In the image above, the consumer clicked on an affiliate link for a VPN product promoted by a creator known as "Linus Tech Tips." The affiliate link brought the consumer to the webpage of the online merchant, Private Internet Access, to purchase that VPN product.

41.     When the RetailMeNot browser extension is not turned on, the inspection panel for this website lists several cookies, including "affiliate" and "coupon." Both the "affiliate" cookie value of "513448" and the "coupon" cookie value of "linus1," as seen in greater detail in the image below, are unique to Linus Tech Tips, the creator who was promoting the product. Because these cookie values are associated with the creator Linus Tech Tips, Linus Tech Tips would get credit for the referral and should receive a commission from the online merchant if the consumer purchases the product.



42.    When the RetailMeNot browser extension is activated, a consumer who engages with the RetailMeNot browser extension will encounter a pop-up window from the RetailMeNot browser extension offering to search for available cash-back offers and/or coupon codes.

43.    Once the consumer clicks on a button to have the RetailMeNot browser extension search for these potential deals, the RetailMeNot browser extension discreetly opens a new tab that acts as a simulated referral click. By way of the newly opened tab, the RetailMeNot browser extension removes the cookies that credit the creator—in this example, Linus Tech Tips—with the referral and sale, and replaces them with cookies crediting Defendants.

44.    Taking the example at hand, under the cover of searching for applicable cashback offers and coupon codes for the consumer's purchase, the RetailMeNot browser extension altered the tracking tags at checkout by removing Linus Tech Tips' affiliate cookie—which has a value of "513448"—and replacing it with RetailMeNot's own affiliate cookie—which has a value of "1932205," and by removing Linus Tech Tips' coupon cookie—which has a value of "linus1"—and replacing it with a different coupon cookie—which has a value of "2Y2M."

| Name | ▲ | Value |
|---|---|---|
| _gcl_au | | 1.1.953925622.1737314763 |
| _uetsid | | dd004be0e7f111efb8f603e464d... |
| _uetvid | | 1f041c30d1c011efbf6e67f514cce... |
| affiliate | | 1932205 |
| assisting_media | | cja%3Bdirect%3Bcja%3Bdirect%... |
| campaign | | campaign_default25 |
| cf_clearance | | YsgSoVuaul4piGxqOp4lLL9q8rIf2... |
| cjevent | | 0d814492e7f311ef80c900040a1c... |
| clickID | | YfnSjY8iyidnsGtEqKG9 |
| coupon | | 2Y2M |

45.    By substituting RetailMeNot's own tracking tags for those of Linus Tech Tips, Defendants thus steal credit for the referral and ultimate purchase of the product even though they did not help the consumer identify the product.

46.    Defendants designed the RetailMeNot browser extension in a manner that requires consumers to actively engage with the browser extension—i.e., click buttons—to receive a discount, rewards, or cash-back. These clicks are important to Defendants because, without them, the creator will still be credited with the sale and receive any corresponding commission payment. Defendants only get credit for the sale if they persuade the consumer to click on their pop-up, thereby facilitating the replacement of the creator's cookies with Defendants' cookies.

47.    In replacing a creator's cookies with Defendants' own cookies, Defendants steal credit for the creator's sale and resulting commission payment.

48.    Defendants steal credit for creators' sales regardless of whether the RetailMeNot browser extension finds a consumer a better deal on a purchase.

**B.    Plaintiff's Experience**

49.    Shonna Coleman is an influencer and creator who earns commission payments from affiliate marketing links she shares on social media, including Facebook (see, e.g.,

https://www.facebook.com/share/p/1HYMCVzoAc/,

https://www.facebook.com/share/p/15XvJdJwmY/,

https://www.facebook.com/share/p/194HujNaX9/) and X (formerly known as Twitter)

(@shonnacoleman).

50.    In past years, Ms. Coleman has received substantial commission payments from products purchased via her affiliate marketing links.

51.    Ms. Coleman would have earned more income in the form of commission payments but for Defendants' scheme to usurp commissions through the RetailMeNot browser extension.

52.    Defendants, via the RetailMeNot browser extension, stole credit for sales and conversions that Ms. Coleman originated via her own platforms through the affiliate marketing links that she shared.

**C.    How Class Members Were Harmed**

53.    Defendants' conduct harmed Plaintiff and the Class because the RetailMeNot browser extension systematically steals commission payments from the rightful owners—i.e., the individual who promoted and shared the affiliate link and generated the referral and ultimate sale of a product or service.

54.    Plaintiff promotes products via her social media channels and hosts affiliate links to those products, including on platforms where the RetailMeNot browser extension operates.

55.    When one of Ms. Coleman's followers clicks on her affiliate link and adds a recommended product to their online shopping cart, Ms. Coleman's referral tag and cookie attaches and attributes the referral and sale of the product to Ms. Coleman, thereby crediting her with the sale and corresponding commission payment.

56.    However, if the consumer activates the RetailMeNot browser extension during checkout, Defendants wrongfully remove Ms. Coleman's affiliate cookie and replace it with Defendants' own affiliate cookies, stealing credit for the referral and corresponding commission payment for the sale of that product.

57.    Ms. Coleman spends a substantial amount of time and money cultivating her follower base and promoting the products featured in her affiliate links.

58.    She relies on the stream of income she generates through her work as a creator.

59.    The RetailMeNot browser extension is activated during millions of online purchases each year. In the absence of the RetailMeNot browser extension, Plaintiff and the Class would have earned more money in the form of referral fees and sales commissions from their respective affiliate marketing links.

60.    Plaintiff continues to devote time and energy to content creation to generate commissions. Plaintiff accordingly faces future harm in the form of misappropriated referral fees and sales commissions because the RetailMeNot browser extension continues to steal affiliate marketing commissions to this day.

## CLASS ALLEGATIONS

61.    Plaintiff, on behalf of herself and the class defined below under the Federal Rules of Civil Procedure, Rule 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), seeks damages and injunctive relief:

> **Nationwide Class:** All persons in the United States who participated in an affiliate commission program with a United States online merchant and had commissions diverted to Defendants as a result of the RetailMeNot browser extension.

> **Nebraska Subclass:** All persons in Nebraska who participated in an affiliate commission program with a United States online merchant and

- 11 -

had commissions diverted to Defendants as a result of the RetailMeNot browser extension.

(together, "the Class").

62.     Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

63.     **Numerosity:** Members of the Class are so numerous that joinder is impracticable. There are at least tens of thousands of members of the Nationwide Class, geographically dispersed throughout the United States, such that joinder of all Class members is impracticable. There are at least thousands of members of the Nebraska Subclass, such that joinder of all Subclass members is likewise impracticable.

64.     **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. The factual and legal bases of Defendants' liability are the same and resulted in the same type of injury to Plaintiff and all other members of the Class.

65.     **Adequate representation:** Plaintiff will represent and protect the interests of the Class both fairly and adequately. She has retained counsel competent and experienced in complex class action litigation. Plaintiff has no interests that are antagonistic to those of the Class, and her interests do not conflict with the interests of the Class members she seeks to represent.

66.     **Commonality and Predominance:** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Defendants have acted on grounds generally applicable to the Class and because Class members share a common injury. Common facts and legal questions apply to the claims of

Plaintiff and Class members because the injuries incurred by Plaintiff and each member of the Class arose from the same conduct alleged herein.

67. There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

a. Whether Defendants programmed and designed the RetailMeNot browser extension in a manner that wrongfully credits Defendants as the originators of sales referrals;

b. Whether the scheme described herein results in Defendants being awarded commission payments that Defendants did not rightfully earn;

c. Whether Defendants were unjustly enriched to the detriment of Plaintiff and the Class in the form of commission payments;

d. Whether Defendants, through the actions alleged in this complaint, violated consumer protection laws in the state of Nebraska;

e. Whether consumers and Class members have been damaged by Defendants' conduct; and

f. The nature and scope of appropriate injunctive relief.

68. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the Class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter. Here, the class action device will present far fewer management difficulties, and it will provide the benefit

of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be ensured.

69.     Class certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4) because:

- The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants;

- The prosecution of separate actions by individual Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

- Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole; and

- The claims of Class members consist of common issues whose resolution in a class trial would materially advance this litigation.

## TOLLING OF THE STATUTES OF LIMITATIONS

70.     All applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiff and Class members could not have reasonably discovered Defendants' practice of surreptitiously manipulating network transmissions through the operation of the RetailMeNot browser extension to allow Defendants to take credit for sales commissions they did not earn.

71.     Defendants were and remain under a continuing duty to disclose to Plaintiff and Class members their practice of displacing creators' tracking tags with their own tracking tags to appropriate commissions that belong to Plaintiff and Class members. The active concealment by Defendants tolls any and all statutes of limitations otherwise applicable to the allegations herein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### UNJUST ENRICHMENT
### (ON BEHALF OF THE CLASS)

72.     Plaintiff incorporates the above allegations by reference as if fully set forth herein.

73.     Plaintiff lacks an adequate remedy at law.

74.     Plaintiff and Class members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were rightfully earned by Plaintiff and Class members, not Defendants.

75.     Defendants benefitted from the referral fees and commission payments that were credited to them as a function of the RetailMeNot browser extension wrongfully claiming credit via last-click attribution.

76.     Defendants understood that they so benefitted, and they also understood and appreciated that the RetailMeNot browser extension would cause the harm described herein.

77.     But for Defendants' unjust and improper use of the RetailMeNot browser extension, Defendants would not have been credited and awarded commission on sales that emanated from Plaintiff and Class members' respective affiliate links.

78.     As a result of Defendants' wrongful conduct as alleged in this Complaint, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members.

79.     Defendants continue to benefit and profit from the RetailMeNot browser extension while Plaintiff and Class members continue to have their rightful commission payments diverted to Defendants.

80.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including by using the RetailMeNot browser extension to wrongfully credit Defendants with referrals and commissions they did not rightfully earn.

81.     The benefit conferred upon, received, and enjoyed by Defendants was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendants to retain the benefit.

82.     Equity and good conscience militate against permitting Defendants to retain the profits and benefits from Defendants' wrongful conduct, which should be restored to Plaintiff and Class members.

**SECOND CAUSE OF ACTION**
**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(ON BEHALF OF THE CLASS)**

83.     Plaintiff incorporates paragraphs 1 through 71 by reference as if fully set forth herein.

84.     Plaintiff and Class members have economic relationships with online merchants, under which they refer their audiences to those merchants through affiliate links. In return, online merchants provide Plaintiff and Class members with referral fees or commissions. These economic relationships are ongoing, and Plaintiff and Class members expect to continue earning commissions in exchange for referrals.

85.     Defendants are aware of these relationships between Plaintiff and Class members on the one hand and online merchants on the other hand.

86.     Through the use of the RetailMeNot browser extension, Defendants divert commission payments from Plaintiff and Class members who promoted and shared an affiliate link and generated the referral and ultimate sale of an online merchant's product or service. Defendants, via the RetailMeNot browser extension, displace tracking tags that point to specific content creators as the source of the referral and substitute their own tracking tags, even though the sales in question emanated from a creator's affiliate marketing link.

87.     Defendants either intended to usurp commissions from Plaintiff and Class members through the conduct alleged herein or knew that Defendants' conduct would appropriate commissions and referral fees from Plaintiff and Class members.

88.     Defendants' conduct harmed Plaintiff and Class members because the RetailMeNot browser extension deprived them of monies that they earned as the true originators of sales arising from their affiliate marketing links.

89.     As a direct and proximate result of Defendants' conduct described in this Complaint, Plaintiff and Class members suffered economic injury by being deprived of commissions that they should have earned from referrals through their affiliate links.

90.     As a result of the above conduct, Defendants are liable to Plaintiff and Class members for damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**CONVERSION**
**(ON BEHALF OF THE CLASS)**

91.     Plaintiff incorporates paragraphs 1 through 71 by reference as if fully set forth herein.

92.     Plaintiff and Class members possessed or had a right to possess commissions they earned from referring consumers to products and services sold by online merchants. The amount of each commission constituted a specific and identifiable sum.

93.     Defendants intentionally and substantially interfered with Plaintiff and Class members' personal property by usurping commissions and referral fees owed to Plaintiff and Class members.

94.     Defendants, without proper authorization, assumed and exercised the right of ownership over these commissions, in hostility to the rights of Plaintiff and Class members, without justification.

95.     Defendants' wrongful exercise of control over Plaintiff and Class members' personal property constitutes conversion.

96.     Plaintiff and Class members neither assented to nor ratified Defendants' interference with their commissions.

97.     As a direct and proximate result of Defendants' conversion, Plaintiff and Class members were harmed.

98.     Defendants are liable to Plaintiff and the Class for damages and costs permitted by law.

## FOURTH CAUSE OF ACTION
### VIOLATION OF NEBRASKA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT (UDTPA)
### NEB. REV. STAT. §§ 87-301
### (ON BEHALF OF THE NEBRASKA SUBCLASS)

99.     Plaintiff incorporates paragraphs 1 through 71 by reference as if fully set forth herein.

100.    Nebraska's UDPTA makes it unlawful to engage in deceptive trade practices.

101.    Defendants violated Nebraska's UDPTA through their conduct as alleged herein. In particular, Defendants' conduct constitutes a violation of Sections 87-302(a)(2), (a)(3), (a)(5), (a)(6), (a)(12), and (a)(16).

102.    Defendants are liable to Plaintiff and the Class for damages, costs, and injunctive relief as permitted by law.

### FIFTH CAUSE OF ACTION
### VIOLATION OF NEBRASKA CONSUMER PROTECTION ACT (NCPA)
### NEB. REV. STAT. §§ 59-1602
### (ON BEHALF OF THE NEBRASKA SUBCLASS)

103.    Plaintiff incorporates paragraphs 1 through 71 by reference as if fully set forth herein.

104.    The NCPA provides, in relevant part, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."

105.    Defendants violated the NCPA through its conduct as alleged herein.

106.    Defendants' conduct affected the public interest because it was widespread. Affiliate links are ubiquitous, as is the RetailMeNot browser extension.

107.    Defendants are liable to Plaintiff and the Class for damages, costs, and injunctive relief as permitted by law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A.    Certify this case as a class action and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

B.    Enter judgment in favor of Plaintiff and the Class;

C.      Enter injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class, including to prevent Defendants from taking credit for sales that they did not originate;

D.      Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and restitution to which Plaintiff and the Class are entitled;

E.      Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F.      Award Plaintiff and the Class pre- and post-judgment interest as provided by law;

G.      Enter such other orders as may be necessary to restore to Plaintiff and the Class any money and property acquired by Defendants through their wrongful conduct;

H.      Award Plaintiff and the Class reasonable litigation expenses and attorneys' fees as permitted by law; and

I.      Award such other and further relief as the Court deems necessary and appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

DATED: February 24, 2025                    Respectfully submitted,

By: */s/Zachary M. Vaughan*
Zachary M. Vaughan, NY Bar No. 4993283
BERGER MONTAGUE PC
1001 G Street NW, Suite 400 East
Washington DC 20001
T. 215-875-4602
zvaughan@bm.net

E. Michelle Drake*
Marika K. O'Connor Grant*
BERGER MONTAGUE PC

1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. 612.594.5999; F. 612.584.4470
emdrake@bm.net
moconnorgrant@bm.net

Sophia M. Rios*
BERGER MONTAGUE PC
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
T. 619.489.0300
srios@bm.net

Gary M. Klinger*
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Alexandra M. Honeycutt*
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (866) 252-0878
ahoneycutt@milberg.com

Adam E. Polk*
Simon S. Grille*
GIRARD SHARP LLP
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com

Norman E. Siegel*
Barrett J. Vahle*
Joy D. Merklen*
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com

vahle@stuevesiegel.com
merklen@stuevesiegel.com

*pro hac vice forthcoming*

*Attorneys for Plaintiff*